## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL J. FRISCHENMEYER,   )
                               )
              Plaintiff,     )
                               )
vs.                           )    Case No. 07-1206-MLB
                               )
GARY STEED, *et al.,*       )
                               )
            Defendants.   )
_____ )

## MEMORANDUM AND ORDER

The Court previously entered an Order (Doc. 4) granting Plaintiff Michael J. Frischenmeyer's Application for Leave to File an Action Without Payment of Fees, Costs, or Security (Doc. 2, sealed). In the Order, however, the Court determined that Plaintiff's Complaint (Doc. 3) was factually insufficient and ordered that Plaintiff file an Amended Complaint addressing each of the deficiencies as outlined by the Court. (Doc. 4.) Plaintiff was specifically instructed that he should provide sufficient facts to put each of the Defendants on notice of their alleged wrongful conduct, as well as to provide the Court with sufficient detail to ensure the claims are not frivolous, and that jurisdiction and venue are appropriate in the District of Kansas. Plaintiff was instructed to attempt to describe approximately

when, where, by whom, and how <u>each</u> of the defendants and/or its representatives
were involved in a conspiracy with the other Defendants.  (Doc. 4, at 14.)  Rather
than file an Amended Complaint as directed, Plaintiff filed a "Response" to the
Court's Order.  (Doc. 5.)  The Court will consider any additional factual allegations
contained in Plaintiff's Response to be a supplement to those contained in his
Complaint.[1]  (Doc. 3.)

## <u>DISCUSSION</u>

The Court must consider whether dismissal of Plaintiff's claims, filed *pro se*,
is required under 28 U.S.C. § 1915.  Section 1915 of Title 28, United States Code,
requires dismissal of a case filed under that section if the court determines that the
action (1) is frivolous or malicious, (2) fails to state a claim upon which relief may
be granted or (3) seeks monetary relief from a defendant who is immune from suit.
28 U.S.C. §1915(e)(2).  The purpose of § 1915(e) is "the prevention of abusive or
capricious litigation."  ***Harris v. Campbell***, 804 F.Supp. 153, 155 (D.Kan. 1992)
(internal citation omitted) (discussing similar language contained in § 1915(d),
prior to the 1996 amendment).  *Sua sponte* dismissal under § 1915 is proper when

---

[1]  Plaintiff complains that he was "only" given "about 20 days to respond" to the
Court's Order.  (Doc. 5, at 5.)  Pursuant to the relevant Federal Rule, the Court need only
provide Plaintiff with ten (10) days to respond.  Fed.R.Civ.P. 72.  Regardless, Plaintiff
did not request an extension of this time.

2

the complaint clearly appears frivolous or malicious on its face.  ***Hall v. Bellman***, 935 F.2d 1106, 1108 (10th Cir. 1991).[2]

In determining whether dismissal is appropriate under § 1915, Plaintiff's Complaint and the additional information he provided in his "Response" (Doc. 5) will be analyzed by the Court under the same sufficiency standard as a Rule 12(b)6 Motion to Dismiss.  *See **Ellibee v. Hazlett***, 122 Fed.Appx. 932, 934 (10th Cir. 2004); ***Carson v. Tulsa Police Dept.***, No. 07-5030, 2008 WL 467753, slip op. at *2 (10th Cir. Feb. 21, 2008).  In determining whether a cause of action should be dismissed, it is well-settled that the Court will accept as true all well-pleaded facts and will draw all reasonable inferences from those facts in favor of the plaintiff. *See **Moore v. Guthrie***, 438 F.3d 1036, 1039 (10th Cir.2006).  As stated in the Court's previous Order, the Court will liberally construe the pleadings of this *pro se* Plaintiff.  *See **Jackson v. Integra Inc.***, 952 F.2d 1260, 1261 (10th Cir.1991). This does not mean, however, that the Court must become an advocate for the *pro*

---

[2]  Plaintiff has indicated that he is "PREPARED TO PAY THE FILING FEE TO GET AWAY FROM THIS TYPE OF CORRUPTION OF THE COURTS SYSTEM." (Doc. 5, at 4, emphasis in original.)  The Tenth Circuit has concluded, however, that §1915 applies even when the plaintiff has ultimately paid the filing fee. *See e.g., **Fogle v. Pierson,*** 435 F.3d 1252, 1258 (10th Cir. 2006).  Here, Plaintiff is not a prisoner as defined in 28 U.S.C. § 1915(h).  Courts have held, however, that the § 1915(e)(2) screening procedure applies to all litigants, prisoners and non-prisoners alike, regardless of their fee status. *See e.g*., ***Rowe v. Shake***, 196 F.3d 778, 783 (7th Cir. 1999); ***McGore v. Wigglesworth***, 114 F.3d 601, 608 (6th Cir. 1997).

3

*se* plaintiff.  *Hall*, 935 F.2d at 1110; *see also* **Haines v. Kerner**, 404 U.S. 519, 92

S.Ct. 594 (1972).

Further, the broad reading of a plaintiff's complaint does not relieve his

burden of alleging sufficient facts to give the opposing parties fair notice of the

basis of the claims against them so that they may respond or to allow the court to

conclude that the allegations, if proved, show plaintiff is entitled to relief.  *Hall*,

935 F.2d at 1110; *see also* **Monument Builders of Greater Kansas City, Inc. v.**

**American Cemetery Ass'n of Kansas**, 891 F.2d 1473 (10th Cir. 1989).  Liberally

construing a *pro se* plaintiff's complaint means that "if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it

should do so despite the plaintiff's failure to cite proper legal authority, his

confusion of various legal theories, his poor syntax and sentence construction, or

his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110.  A case

should be dismissed, however, "if . . . the complaint does not contain 'enough facts

to state a claim to relief that is plausible on its face.'"  **Macarthur v. San Juan**

**County**, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting **Bell Atlantic Corp. v.**

**Twombly**, __ U.S. __, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007)); *see also*

**Anderson v. Suiters**, 499 F.3d 1228, 1232 (10th Cir. 2007).

Although Plaintiff is not required to plead "detailed factual allegations," his

Complaint "must set forth the grounds of [his] entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *Fisher v. Lynch*, __ F.Supp.2d __, No. 07-2154-KHV, 2008 WL 191794, at *1 (D. Kan. Jan. 22, 2008) (citing *Bell Atlantic Corp. v. Twombly*, ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007), and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (holding that a plaintiff need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved)). "In other words, plaintiff must **allege sufficient facts to state a claim which is plausible – rather than merely conceivable** – on its face." *Fisher*, 2008 WL 191794, at *1 (citing *Twombly*, 127 S.Ct. at 1974).

After reviewing Plaintiff's submissions and construing the allegations liberally, if the Court finds that Plaintiff has failed to state a claim upon which relief may be granted, the Court is compelled to recommend that the action be dismissed. The Court will address the sufficiency of the information provided by Plaintiff regarding the various Defendants.

### A.    Sedgwick County Sheriff Gary Steed, Texas Parole Officer Brandon Poland, and Defendant Michael Sullivan of the Austin Transition Center.

Plaintiff's initial Complaint contained allegations that Sedgwick County Sheriff Gary Steed informed four unidentified Austin, Texas police officers that

5

Plaintiff was "wanted by his office . . . and the charge was six (6) counts of terroristic threats." (Doc. 3, at 10.) There were, however, no factual allegations in the original Complaint directly linking Sheriff Steed to any of the other named Defendants (the four unidentified Austin police officers are not parties to this litigation). Although the original Complaint contained allegations regarding the Sedgwick County Sheriff's Department in general (and two unidentified deputies in particular), it did not contain other specific factual allegations regarding Sheriff Steed. Based on the facts as originally alleged by Plaintiff, there was no basis for finding Sheriff Steed liable for violations of § 1983 because, under most circumstances, a defendant in a § 1983 case "may not be held liable under a theory of respondeat superior." *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir.2000).

Plaintiff's Response contains additional factual allegations stating that Sheriff Steed "made up false and phone criminal charges of '. . . SIX COUNTS of Terroristic Threats against this petitioner when Sheriff Steed knew for a fact that those charges had been adjudicate [sic] in November 1991." (Doc. 5, at 1.) Plaintiff continues that Sheriff Steed spoke "DIRECTLY with the Austin Police Officer's [sic] that had [Plaintiff] under arrest and made up these lies because he knew that petitioner had evidence to prove his innocence." (*Id.*) Steed is now

alleged to have spoken with Defendant Brandon Poland, a Texas Parole Officer,[3] and Defendant Michael Sullivan of the Austin Transition Center,[4] on May 10 and 11, 2006, and "made it clear to them both that material was to be destroyed."  (*Id.*, at 1-2.)  Plaintiff contends that he spoke with Poland and Sullivan on those days as well, who allegedly told him that "they were in constant contact" with Steed "and knew that this was the way it was planned."  (*Id.*, at 2.)

Taking these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has now alleged sufficient facts to withstand dismissal of his conspiracy claims against Defendants Steed, Poland, and Sullivan at this time.  As such, the Court is **not** recommending dismissal in regard to these three Defendants.

**B.     Sedgwick County District Attorney Nola Foulston, Assistant District Attorney Amanda Morino, and Assistant District Attorney Randall J. Hubert**.

Plaintiff concedes that Ms. Foulston can be "dropped" from this lawsuit if

---

[3] Based on the information initially submitted by Plaintiff, the Court previously determined that it was "unable to find in Plaintiff's Complaint and attached exhibits any reference to Poland being aware of Plaintiff's legal material or of his communication with any of the other Defendants."  (Doc. 4, at 9.)

[4] Based on the information initially submitted by Plaintiff, the Court previously determined that no facts had been alleged "that would connect Sullivan with any of the other Defendants in any sort of conspiracy to keep Plaintiff's belongings from him." (Doc. 4, at 6.)

she "cannot be held responsible for her assistant attorneys."  (Doc. 5, at 3.) The

Courts in this Circuit have held that a supervisor cannot be held liable for the

actions of his or her subordinates absent a link between the alleged constitutional

deprivation and the supervisor's personal participation, exercise of control, or

failure to supervise.  **Worrell**, 219 F.3d at 1214.  Plaintiff failed to establish any

such link.

Plaintiff contends that "Ms. Foulston's involvement goes back to the first

day this case began" in 1991.  (Doc. 5, at 2.)  He contends that "[t]here was no

investigation and [Ms. Foulston] knew it."  (*Id*.)  According in to Plaintiff, at that

time, Ms. Foulston was "new in the District Attorney's office and gung ho enough

to manufacture evidence to convict."  (*Id*.)  He also complains of her "willingness

to convict" him.  (*Id*.)  Plaintiff's unsupported opinion about Ms. Foulston's drive

and motivation equates to nothing more than conclusory commentary, and thus is

not factually sufficient to state a plausible claim against her.  **Scott v. Hern**, 216

F.3d 897, 908 (10th Cir. 2000).  As such, the Court continues to recommend

dismissal of Plaintiff's claims against Defendant Nola Foulston.

The Court previously indicated that claims against Assistant District

Attorneys Morino and Hubert are likely barred by the doctrine of prosecutorial

immunity.  Absent factual allegations that Ms. Morino and Mr. Hubert stepped

outside their prosecutorial role in regard to Plaintiff or his criminal case, the Court

previously stated it would be obligated to recommend dismissal of claims against

them.  *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff has now alleged that Ms. Morino and Mr. Hubert "forced a witness

to lie and both made false statements that could have proven false had they not

conspired to destroy evidence the petitioner had in his position."  (*Id.*, at 3.)

Plaintiff claims to have a former employee of the District Attorney's office with

"first hand knowledge of these facts" who is willing to testify on Plaintiff's behalf.

(*Id.*)

Courts in other jurisdictions have held that prosecutors are entitled to

prosecutorial immunity from civil rights actions alleging evidence tampering,

making false pretrial statements, or using perjured testimony.  ***Sims v. Kernan***, 29

F.Supp.2d 952, 959 (N.D. Ind. 1998); ***Gutierrez v. Vergari***, 499 F.Supp. 1040,

1051-52 (S.D.N.Y. 1980) (applying absolute prosecutorial immunity for actions

occurring during judicial, rather than investigative, phase).[5]

> [P]rosecutors have absolute immunity for the initiation
> and pursuit of a criminal prosecution, including
> presenting the state's case at trial or any other conduct
> 'intimately associated with the judicial phase of the

---

[5]  When the alleged harm consists of wrongful imprisonment, as it does in this
case, it "clearly resulted from [the plaintiff's] criminal prosecution," which is part of the
judicial phase. ***Gutierrez***, 499 F.Supp. at n. 1.

> criminal process.' ***Imbler v. Pachtman***, 424 U.S. 409,
> 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). 'In initiating a
> prosecution and in presenting the State's case, the
> prosecutor is immune from a civil suit for damages under
> § 1983.' *Id.* at 431, 96 S.Ct. 984; *see also* ***Buckley v.
> Fitzsimmons***, 509 U.S. 259, 269, 113 S.Ct. 2606, 125
> L.Ed.2d 209 (1993); ***Cleavinger v. Saxner***, 474 U.S. 193,
> 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). This
> immunity applies even where the prosecutor acts
> 'maliciously, unreasonably, without probable cause, or
> even on the basis of false testimony or evidence.' ***Henry
> v. Farmer City State Bank***, 808 F.2d 1228, 1238 (7th
> Cir.1986).

*Sims*, 29 F.Supp.2d at 959.  As such, the Court continues to recommend dismissal

of Plaintiff's claims against Defendants Morino and Hubert.

**C.    Larry LeFlore, Paul Wilder, and Judy Moncil of the Texas
Department of Criminal Justice Classifications and Records**.

Plaintiff engaged in written correspondence with these Defendants,

requesting copies of the waiver of extradition and notice of withdrawal of the

Sedgwick County Sheriff's detainer.  (Doc. 3, at 14-15.)  Apparently, the

Defendants responded to Plaintiff's inquiries, but "did not admit to nor deny the

error [relating to his detainer] was caused by them."  (*Id.*, at 15.)

Plaintiff has provided the Court with nothing substantive regarding these

Defendants.  At worst, Plaintiff contends that these Defendants "evaded the truth"

by stating that "the ' . . . error was corrected in a timely manner and the correct

transference of custody was made . . .'."  (Doc. 5, at 3.)  Even assuming these

Defendants were responsible for an alleged error regarding Plaintiff's detainer, this provides no factual support of their involvement in any alleged conspiracy to destroy or fabricate legal material.  Plaintiff also contends that he

> has evidence that the State of Texas and sheriff Steed were in contact with each other because the letter this petitioner wrote to Mr. Lefore [sic] dated November 1, 2006 and was stamped as received by Mr. Leflore (as chairman) on November 6, 2006 and has a note on it that states; "...........cancelled by fax on 4-28-06..." with another note on it that reads "...deed folder" and is circled.

Doc. 5, at 3.)  The Court fails to see the relevance of this allegation nor does it understand how this connects Mr. Leflore (let alone Mr. Wilder and Ms. Moncil) to an alleged conspiracy with Sheriff Steed.  Further, even if there is evidence that these Defendants were in contact with each other or other Defendants, any allegation that the communication was conspiratorial in nature is pure conjecture. As such, the Court continues to recommend dismissal of Plaintiff's claims against Defendants Leflore, Wilder, and Moncil.

     **D.**    **Attorney Michael C Brown and Becky L. Wellmaker**.

Plaintiff is correct that, in certain situations, "a private citizen that conspires with a public, official whom is liable can be held responsible under the same acts as that public official."  (Doc. 5, at 4.)  *See e.g., **Beedle v. Wilson***, 422 F.3d 1059, 1071 (10th Cir. 2005) (quoting ***Dennis v. Sparks***, 449 U.S. 24, 27, 101 S.Ct. 183,

66 L.Ed.2d 185 (1980)); *see also **Brokaw v. Mercer County***, 235 F.3d 1000, 1016 (7th Cir. 2000).  Even assuming that to be true in the present matter, Plaintiff has failed to allege sufficient facts establishing that either Michael Brown, his appointed attorney, or Becky Wellmaker, his former girlfriend, were involved in any conspiracy with a public official.

To the contrary, Plaintiff previously alleged that he asked Brown to contact Defendant Michael Sullivan of the Austin Transition Center on Plaintiff's behalf but that Brown did not do so.  (Doc. 3, at 13.)  Obviously, if these Defendants did not communicate, they could not have conspired together against Plaintiff. Plaintiff also contends that he saw Brown "in the company of" co-Defendants Morino and Hubert, and "they were not talking about this case."  (*Id*.)  This provides no factual support for an alleged conspiracy among these Defendants when Plaintiff freely admits that these individuals were not talking about his case.  *See **Scott***, 216 F.3d at 908.

In his Response, Plaintiff fails to address the Court's concerns regarding these admitted absences of communication.  Rather, Plaintiff now contends that

> Mr. Brown knew what he was told to do by the Defendants and then carried out his end of that agreement.
> It is common knowledge that court appointed attorneys would make a deal with the state and trade a case off for another.  Its unconstitutional, and its cowardly, but it is

done everyday and that is exactly what Mr. Brown did.

(Doc. 5, at 4.)  Plaintiff's additional comments about Brown have little, if any, evidentiary value.  He has failed to provide anything of substance to establish the involvement of Brown in an actual conspiracy.  His statements that Brown made a "deal" with the State and that it is "common knowledge" that such deals occur are entirely conclusory and have no evidentiary value.

As for Ms. Wellmaker, Plaintiff previously stated that she was involved in a conspiracy with the District Attorney to convict Plaintiff of "probation violation when she knew that no violation took place as she had written petitioner and sent photographs while he was in prison in Texas."  (Doc. 1, at 4.)  The fact that Ms. Wellmaker communicated with Plaintiff while he was in prison but later decided to cooperate with the District Attorney's office is not evidence of her involvement in a conspiracy.  Plaintiff's Response adds the additional allegation that Ms. Wellmaker "was told what to testify to, because the District Attorney made it clear to her that they had destroyed the evidence the petitioner had in his possession by the phony arrest and incarceration of this petitioner."  (*Id.*)  The allegation that Ms. Wellmaker allowed the District Attorney to formulate her testimony constitutes little more than an assumption on Plaintiff's part.

Simply stated, Plaintiff has failed to provide factually sufficient information

to state a plausible claim against Mr. Brown or Ms. Wellmaker.  *See Scott*, 216

F.3d at 908 (holding that pleading factual averments of concerted activities, rather

than conclusory allegations, is necessary to support a § 1983 conspiracy claim).

Thus, the Court continues to recommend dismissal of Plaintiff's claims against

these Defendants.


### E.   Two Unknown and Unnamed Sedgwick County Kansas Sheriff's Deputies; Travis County Texas Sheriff Greg Hamilton.

In Plaintiff's initial Complaint, he alleges that two unidentified Sedgwick

County Sheriff's Deputies transported him back to Wichita, but failed to show him

his arrest warrant.  (Doc. 3, at 11.)  The Complaint, however, contains no

allegations of communication between these unidentified Defendants and any of

the other Defendants in any potential conspiracy.

Plaintiff does allege that he was held in the Travis County, Texas Jail on

charges from Sedgwick County, Kansas, and that Travis County sheriff's deputies

transported him and turned him over to the unnamed Defendant Sedgwick County

sheriff's deputies.  (*Id*., at 10-11.)  However, the two unidentified Travis County

deputies are not named Defendants in this case.  Sheriff Greg Hamilton is.  The

factual allegations in Plaintiff's initial Complaint, however, make no reference to

any personal involvement of Defendant Hamilton.  As such, he is not a proper

14

Defendant under the facts alleged by Plaintiff.  *Worrell*, 219 F.3d at 1214 (10th

Cir.2000) (holding that a defendant in a § 1983 case typically "may not be held

liable under a theory of respondeat superior").

Plaintiff's Response (Doc. 5) contains no reference to – let alone additional

factual allegations regarding – Sheriff Hamilton or the two unidentified Sedgwick

County Sheriff's deputies.  As such, Plaintiff has failed to provide factually

sufficient information to state a plausible claim against these Defendants.  *See*

*Scott*, 216 F.3d at 908 (holding that pleading factual averments of concerted

activities, rather than conclusory allegations, is necessary to support a § 1983

conspiracy claim).  Thus, the Court continues to recommend dismissal of

Plaintiff's claims against Hamilton or the unnamed Sedgwick County deputies.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's claims against the

following Defendants be **DISMISSED** pursuant to 28 U.S.C. §1915(e):  Greg

Hamilton, Larry LeFlore, Paul Wilder, Judy Moncil, Nola Foulston, Amanda

Morino, Randall J. Hubert, Michael C. Brown, Becky Wellmaker, and Two

Unknown and Unnamed Sedgwick County Sheriff's Deputies.

Plaintiff shall have **thirty (30)** days after service of a copy of these proposed

findings and recommendations to serve and file with the U.S. District Judge

assigned to the case, his written objections to the findings of fact, conclusions of law, or recommendations of the magistrate judge.[6]  A party's failure to file such written, specific objections within the thirty-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

     **IT IS FURTHER RECOMMENDED** that Plaintiff has alleged sufficient facts to withstand dismissal of his claims against Defendants Gary Steed, Brandon Poland, and Michael Sullivan at this time.

     Plaintiff is instructed to verify with the Clerk of the Court regarding whether he has supplied sufficient and correct contact information for the remaining Defendants (Steed, Poland, and Sullivan) to enable the Clerk to issue summons to these three defendants.  Thereafter, it shall be Plaintiff's obligation to

---

[6]  Pursuant to 28 U.S.C. §636(b)(1), Fed.R.Civ.P. 72, and D.Kan. Rule 72.1.4, a party is provided **ten (10)** days to file such written objections.  Based on Plaintiff's prior complaints regarding insufficient time to comply with certain Court orders, the Court is extending the time allotted under the rules.

16

periodically inspect the Court file to determine whether proper service has been

effected and to proceed accordingly with his case.

Dated at Wichita, Kansas, on this 11th day of April, 2008.

 S/  DONALD W. BOSTWICK      
DONALD W. BOSTWICK
United States Magistrate Judge